UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT MCCAULEY,

        Plaintiff,

Case No. 1:09-cv-160

Hon. Robert J. Jonker

vs.

CORRECTIONAL MEDICAL SERVICES,
INC., *et al.*,

        Defendants.

                                  /

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant J.T. Shaw's "Motion for Summary Judgment Pursuant to Fed. R. Civ. P. Rule 12(b)" (docket no. 25).

**I.    Background**

Plaintiff sets forth certain allegations relevant to Mr. Shaw in his complaint.[1] On May 20, 2007, before plaintiff arrived at the Michigan Department of Corrections (MDOC), he was involved in a collision that resulted in a brain injury, broken hand, fractured forearms, separated shoulders, broken ribs, injured neck, crushed right foot and muscle tear in the groin area. *Id.* at ¶ 1. Plaintiff became a prisoner at the MDOC on March 7, 2008. *Id.* at ¶ 2. He was transferred to the Deerfield Correctional Facility (ITF) the next month. *Id.* at ¶ 38. Plaintiff was sent to Duane Waters Hospital for an initial examination with the physical therapist on July 28, 2008. *Id.* at ¶ 117. On that

---

[1] Plaintiff's *pro se* amended complaint includes 16 named defendants and at least 4 unknown parties. *See* Amended Compl. (docket no. 6).

date, Mr. Shaw examined plaintiff's foot and ankle, stated that he was to have six sessions of physical therapy ("P.T."), not counting the initial examination. *Id.* at ¶ 119, 183.

At an unspecified date in August 2008 (alleged as "08-??-08"), defendant met with plaintiff and advised him that a doctor gave permission to remove plaintiff's brace (which supported his foot and ankle). *Id.* at ¶¶ 121-23. On that date, plaintiff engaged in physical therapy: he pedaled a stationary bike for 15 minutes; laid on a bed to use a towel to stretch his foot and toes; and engaged in an exercise drawing the alphabet with his toes. *Id.* at ¶ 124-26.

At another session in August 2008 (identified by plaintiff as "08-??-08), plaintiff's brace was removed, his foot was measured, and defendant stated that he would be receiving "Drew Boots." *Id.* at ¶ 128.[2] Defendant told plaintiff that there would be no physical therapy that day and that it would not count as a session. *Id.* at ¶ 129. During this visit, Mr. Shaw made a comment to the footwear salesman that plaintiff had "B.M.S." (Bitter Man's Syndrome). *Id.*

On August 14, 2008, plaintiff was given the "Drew Boots," was grateful to get relief from the brace, and received physical therapy including electrical stimulation and an ultrasound. *Id.* at ¶ 130. It appears that plaintiff attended physical therapy again on "08-??-08," when he received electrical stimulation, an ultrasound and the towel exercises. *Id.* at ¶ 131. When plaintiff requested an evaluation, defendant said he would do it at the next visit. *Id.*

Plaintiff was transferred to a different correctional facility, Boyer Road Correctional Facility (OTF), on August 29, 2008. *Id.* at ¶ 137. On September 22, 2008, plaintiff discussed a grievance (regarding a staph infection) with defendant S. Moore, at which time Moore "berated"

---

[2] These may be the orthotic boots referred to in the physical therapy progress notes attached to the amended complaint. *See* docket no. 6-9.

plaintiff, stating that "there would be no more P.T." *Id.* at ¶ 148. On September 30, 2008, as part of a grievance proceeding, plaintiff became aware that OTF had received records reflecting that he had completed the six physical therapy visits that had been approved. *Id.* at ¶¶ 154, 173. Plaintiff addressed the lack of physical therapy in a Step II grievance on October 8, 2008. *Id.* at ¶ 157. A grievance response indicated that plaintiff refused the last physical therapy session and that "P.T. indicated there was no need for more." *Id.* at ¶ 159.

At page 2 of the Amended Complaint, plaintiff sets forth the following claims against Mr. Shaw: (A) failure to give proper diagnosis; (B) deliberate indifference; (C) failure to follow doctor's instructions; (D) pain and suffering; and (E) breach of duty, not to mock or humiliate. The court views plaintiff's claims (A) through (E), collectively, as asserting an Eighth Amendment claim that Mr. Shaw was deliberately indifferent to his serious medical needs.[3]

## II. Defendant's Motion

### A. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

---

[3] Plaintiff's amended complaint includes the pre-printed prisoner civil rights complaint, an attachment with 229 paragraphs of allegations, and 26 pages of attachments. *See* docket no. 6. The "Statement of Claim" portion of the pre-printed form states that this is a § 1983 claim, that plaintiff has had difficulty getting care to recover from his pre-incarceration collision, that he has been "met with indifference and refusal to believe that I have any injury at all," and that "there still is a refusal to follow through on Specialty Medical Doctor's recommendations." *Id.* at p. 6.

3

of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

As an initial matter, defendant's dispositive motion bears the confusing title of "motion for summary judgment pursuant to Fed. R. Civ. P. Rule 12(b)." *See* docket no. 25. It is apparent from defendant's brief that this is not a motion for summary judgment (which would be brought pursuant to Fed. R. Civ. P. 56), but rather a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See* docket no. 26 at pp. 1-2.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

4

### B. Failure to exhaust

### 1. Exhaustion requirement

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 549 U.S. at 218.

Defendant has moved to dismiss this action for lack of exhaustion. "[A] prisoner's failure to exhaust under § 1997e(a) is an affirmative defense on which the defendant bears the burden of proof." *Vandiver v. Correctional Medical Services, Inc.*, 326 Fed. Appx. 885, 888 (6th Cir. 2009), citing *Jones*, 549 U.S. at 217-220. A defendant can raise affirmative defenses in a motion to dismiss. *See, e.g., Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005) (defendant could properly raise the affirmative defense of qualified immunity "based on a pre-answer motion to dismiss"); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("Like other Rule 12(b)(6) motions to dismiss, a motion to dismiss on statute of limitations grounds should be granted when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief. A court that is ruling on

a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.") (internal quotation marks and citations omitted).

It is appropriate for defendants in a prisoner civil rights action to raise the affirmative defense of failure to exhaust administrative remedies in a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir.), cert. denied 129 S. Ct. 733 (2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense [under the PLRA] . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Id.* (internal quotation marks omitted).

The MDOC grievance procedure is an administrative review regulated by the agency's Policy Directives. This court may take judicial notice of plaintiff's grievance filings in this state agency proceeding for purposes of deciding a motion to dismiss. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion, but may only take judicial notice of facts which are not subject to reasonable dispute); *Marshek v. Eichenlaub*, No. 07-1246, 2008 WL 227333 at *1 (6th Cir. Jan. 25, 2008) (court can take judicial notice of prisoner's transfer as shown in the Bureau of Prison's Inmate locator accessed on the agency's official website); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991) ("[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"); *Walker v. Woodford*, 454 F.Supp.2d 1007, 1021-23 (S.D.Cal. 2006) (the Court may

consider a limited set of documents without converting a Rule 12(b)(6) motion into a motion for summary judgment, including matters that can be judicially noticed; documents pertaining to the prisoner's exhaustion efforts "are part of a state administrative proceeding and may be judicially noticed, not for the truth of their contents but for the fact that the grievance proceeding occurred"); *Eggerson v. United States*, 1: 05-cv-594, 2006 WL 1720252 at *3 (W.D. Mich. June 22, 2006) ("In ruling on a motion under Rule 12(b)(6), the court may supplement the facts alleged in the pleadings by considering facts susceptible to judicial notice under Fed.R.Evid. 201"); *Walker v. Abdellatif*, No. 1:07-cv-1267, 2009 WL 579394 (W.D. Mich. March 5, 2009) (taking judicial notice of MDOC prisoner grievance proceedings in deciding motion to dismiss for lack of exhaustion); *White v. Correctional Medical Services, Inc.*, No. 1:08-cv-277, 2009 WL 596473 (W. D. Mich. March 6, 2009) (same).

Taking judicial notice of a prisoner's administrative grievance proceeding is consistent with the purpose of the PLRA's "invigorated" exhaustion provision, which Congress enacted to control the "sharp rise in prisoner litigation in the federal courts." *Woodford*, 548 U.S. at 84. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones*, 549 U.S. at 204.

7

### 2. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130. A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Defendant Shaw's motion

Defendant's motion is based upon the copies of grievances attached to plaintiff's Amended Complaint. "[A]lthough plaintiff alleges numerous grievances throughout the Amended Complaint and attaches innumerable grievance documents as exhibits and appendices to the Amended Complaint, nowhere do any of these mention Mr. Shaw or any issue of concern with the services that had been rendered by Mr. Shaw." *See* Defendant's Brief at p. 7; Docket nos. 6-13, 6-

14, 6-15, 6-17 and 6-18. In his response to defendant's motion, plaintiff asserts that he raised the issue in two grievances, Exhibits N and EE. *See* Plaintiff's Response (docket no. 51). However, neither of these grievances name Mr. Shaw as the party grieved. Exhibit N complains of an incident that occurred on June 6, 2008, several weeks before plaintiff commenced physical therapy. *See* docket no. 1-4.[4] Exhibit EE was dated September 11, 2008 and filed after plaintiff's transfer from ITF to OTF. *See* docket no. 1-8.[5] In this grievance, plaintiff stated that he was approved for five sessions of physical therapy, completed only four sessions, and needed additional physical therapy. *Id.* While this grievance states that plaintiff missed one session of physical therapy, and needs additional physical therapy at the new facility, the grievance does not name Mr. Shaw nor raise the Eighth Amendment deliberate indifference claims as alleged in this action.

The court is faced with a situation in which plaintiff attached copies of allegedly relevant grievances as exhibits to his pleadings and defendant relied upon the exhibits to demonstrate that plaintiff did not name him in a grievance as required by Policy Directive 03.02.130. Under these circumstances, the court concludes that defendant can rely on plaintiff's exhibits to demonstrate lack of exhaustion. Plaintiff had an opportunity to rebut defendant's motion by providing copies of additional grievances to demonstrate proper exhaustion. However, as the court has discussed, these additional grievances did not rebut defendant's motion, because they too failed to name defendant as required by Policy Directive 03.02.130. Under these circumstances, the court concludes that defendant met his burden to demonstrate lack of exhaustion.[6]

---

[4] This exhibit is Grievance no. ITF 08060044928I, attached to plaintiff's original complaint.

[5] This exhibit is Grievance no. OTF 08090066212I, attached to plaintiff's original complaint.

[6] Plaintiff was not required to attach grievances to his pleadings. However, once plaintiff incorporated the grievances into his pleadings, defendant could rely on those grievances to support his

Because plaintiff failed to name Mr. Shaw in a grievance, he has failed to properly exhaust a grievance against this defendant as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Sullivan v. Kasajaru*, 316 Fed. Appx. 469, 470 (6th Cir. 2009) (affirming dismissal for lack of exhaustion where prisoner failed follow requirements of Policy Directive 03.02.130, which explicitly required him to name each person against whom he grieved, citing *Jones* and *Woodford*). Accordingly, Mr. Shaw is entitled to dismissal for lack of exhaustion.

### C. Eighth Amendment claim

In addition, the court concludes that plaintiff's amended complaint fails to state a claim against Mr. Shaw. It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.*

---

dispositive motion.

at 8 (internal citations and quotation marks omitted).  Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.  As one court observed, "[t]he Constitution decidedly does not require states to make prisons comfortable, and a prison sentence is not a voucher for free health care on demand." *Lee v. Beard*, No. 4:CV-03-1026, 2008 WL 744736 at *8 (M.D. Pa. March 18, 2008).

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).  To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

The amended complaint included copies of progress notes from plaintiff's initial visit with Mr. Shaw on July 28, 2008.  *See* docket no. 6-9.  These progress notes indicate a "frequency of treatment" of "2 x 3 wks" as well as functional goals and a treatment plan.  *Id.*  On its face, it would appear from the progress notes that plaintiff should have received six treatments spread over three weeks.  There is no question that plaintiff had some physical therapy and that his brace was replaced by boots.  Plaintiff alleged that he met with Mr. Shaw five times in July and August 2008.  While plaintiff may not have received all of the physical therapy anticipated by the treatment plan, he received most of sessions of physical therapy and specially ordered boots.  This is not a case

11

where a prisoner was denied treatment. The fact that plaintiff did not receive all of the anticipated physical therapy treatments does not rise to the level of an Eighth Amendment violation. Even if Mr. Shaw was deficient in providing physical therapy to plaintiff, negligence by a health care provider "does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105-06. Furthermore, there is no allegation that Mr. Shaw had any control over transporting plaintiff to physical therapy, which, according to the amended complaint, took place at a different location than plaintiff's correctional facility. Based upon these allegations, the court concludes that plaintiff has not pled factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 129 S.Ct. at 1949. Accordingly, defendant's motion to dismiss should be granted.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendant Shaw's motion to dismiss (docket no. 25) be **GRANTED**.

Dated: January 21, 2010                    /s/ Hugh W. Brenneman, Jr.
                                           HUGH W. BRENNEMAN, JR.
                                           United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).