UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT MCCAULEY,

        Plaintiff,

vs.

CORRECTIONAL MEDICAL
SERVICES, INC., *et al.*,

        Defendants.
                          /

Case No. 1:09-cv-160

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on the following motions:

1.    "Defendants, Correctional Medical Services, Inc., Roger Girlach, M.D.,. Rickey J. Coleman, M.D., and Kyle Sperling, P.A.'s motion to dismiss pursuant to 42 U.S.C. § 1997e(a) and Fed. R. Civ. P. 12(b)(6)" (docket no. 60);

2.    "Defendants Angela Martin's, Carol M. Griffes', Judy Crisenberry's, Julie Van Setters', Blaine Lafler's, Lori Gridley's, Stephen Moore's, Donna Schafer's, and Eileen McKenna's motion for summary judgment" (docket no. 61); and,

3.    Plaintiff's "Motion to amend[] pleading pursuant to Fed. R. Civ. P. 15(c)(1)(c)" (docket no. 87).

    **I.**    **Background**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468

U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff has filed a 34-page amended complaint alleging deliberate indifference to his serious medical needs while he was a prisoner at Carson City Correctional Facility. Plaintiff has named the following defendants: Correctional Medical Services, Inc. (CMS); Roger Girlach, M.D.; R.N. Julie Tudor; Julie Van Setters, Director of Nursing, MDOC Region II; three unknown parties; Kyle Sperling, P.A.; Judy Crisenberry, Nurse Manager at the Charles Egeler Reception and Guidance Center (RGC); Carole Griffes, Health Unit Manager (HUM) at RGC; HUM Michelle Pelon; "unknown parties" (the "pain management committee"); Stephen Moore, Nurse Manager at Carson City (DRF) and Boyer Road (OTF) Correctional Facilities; Angela Martin, Quality Administrator at the Grandview Plaza in Lansing; Rickey J. Coleman, M.D.; Donna Schafer, Administrative Assistant at OTF and DRF; Lori Gidley, Deputy Warden at OTF; Eileen McKenna, HUM at DRF; J.T. Shaw, physical therapist; and Blaine Lafler, Warden at DRF and OTF.

On May 20, 2007, prior to his incarceration, plaintiff was involved in a "traumatic collision" which resulted in the following injuries: brain injury with a positive loss of consciousness; a broken hand; fractured forearm bones; separated shoulders; broken ribs; and a nearly broken neck. Amend. Compl. at p.3 and p. 11, ¶ 1. Plaintiff was sentenced on March 3, 2008 and arrived at the Jackson State Prison on March 7, 2008. *Id.* at p. 11, ¶ 2. His amended complaint alleged that he received inadequate medical care to recover from his pre-incarceration injuries, and suffered from pain in the neck, foot, ankle and clavicle. *Id.* Plaintiff has been discharged from the Michigan

2

Department of Corrections (MDOC) and currently resides in Wyandotte, Michigan. *See* docket no. 137. Defendants motions seek dismissal and summary judgment of plaintiff's asserted against them. In response to these motions, plaintiff has sought to amend his amended complaint.[1]

### III. Defendants' motion to dismiss (docket no. 60)

### A. Legal Standard

Defendants CMS, Dr. Girlach, Dr. Coleman, and P.A. Sperling seek to dismiss plaintiff's action pursuant to Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

---

[1] The court notes that defendant J.T. Shaw has been dismissed from this action. In addition, the four unknown parties, R.N. Julie Tudor and HUM Michelle Pelon have not served in this action.

### B. Failure to exhaust

### 1. Exhaustion requirement

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 549 U.S. at 218.

Defendant has moved to dismiss this action for lack of exhaustion. "[A] prisoner's failure to exhaust under § 1997e(a) is an affirmative defense on which the defendant bears the burden of proof." *Vandiver v. Correctional Medical Services, Inc.*, 326 Fed. Appx. 885, 888 (6th Cir. 2009), citing *Jones*, 549 U.S. at 217-220. A defendant can raise affirmative defenses in a motion to dismiss. *See, e.g., Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005) (defendant could properly raise the affirmative defense of qualified immunity "based on a pre-answer motion to dismiss"); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("Like other Rule 12(b)(6) motions to dismiss, a motion to dismiss on statute of limitations grounds should be granted when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief. A court that is ruling on

4

a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.") (internal quotation marks and citations omitted).

It is appropriate for defendants in a prisoner civil rights action to raise the affirmative defense of failure to exhaust administrative remedies in a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir.), cert. denied 129 S. Ct. 733 (2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense [under the PLRA] . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Id.* (internal quotation marks omitted).

The MDOC grievance procedure is an administrative review regulated by the agency's Policy Directives. This court may take judicial notice of plaintiff's grievance filings in this state agency proceeding for purposes of deciding a motion to dismiss. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion, but may only take judicial notice of facts which are not subject to reasonable dispute); *Marshek v. Eichenlaub*, No. 07-1246, 2008 WL 227333 at *1 (6th Cir. Jan. 25, 2008) (court can take judicial notice of prisoner's transfer as shown in the Bureau of Prison's Inmate locator accessed on the agency's official website); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991) ("[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"); *Walker v. Woodford*, 454 F.Supp.2d 1007, 1021-23 (S.D.Cal. 2006) (the Court may

5

consider a limited set of documents without converting a Rule 12(b)(6) motion into a motion for summary judgment, including matters that can be judicially noticed; documents pertaining to the prisoner's exhaustion efforts "are part of a state administrative proceeding and may be judicially noticed, not for the truth of their contents but for the fact that the grievance proceeding occurred"); *Eggerson v. United States*, 1: 05-cv-594, 2006 WL 1720252 at *3 (W.D. Mich. June 22, 2006) ("In ruling on a motion under Rule 12(b)(6), the court may supplement the facts alleged in the pleadings by considering facts susceptible to judicial notice under Fed.R.Evid. 201"); *Walker v. Abdellatif*, No. 1:07-cv-1267, 2009 WL 579394 (W.D. Mich. March 5, 2009) (taking judicial notice of MDOC prisoner grievance proceedings in deciding motion to dismiss for lack of exhaustion); *White v. Correctional Medical Services, Inc.*, No. 1:08-cv-277, 2009 WL 596473 (W. D. Mich. March 6, 2009) (same).

Taking judicial notice of a prisoner's administrative grievance proceeding is consistent with the purpose of the PLRA's "invigorated" exhaustion provision, which Congress enacted to control the "sharp rise in prisoner litigation in the federal courts." *Woodford*, 548 U.S. at 84. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones*, 549 U.S. at 204.

### 2. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a

problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Plaintiff's grievances pursued through Step III

The record reflects that plaintiff filed eight grievances through Step III of the MDOC's grievance process: ITF-2008-05-00411-12d1 ("411"); ITF-2008-06-00445-12d3 ("445"); OTF-2008-09-00662-12i ("662"); OTF-2008-10-708-28j ("708"); OTF-2008-10-00744-28a ("744"); OTF-2008-12-00855-28e ("855"); OTF-2008-12-886-12e("886"); and OTF-2009-03-00245-12d1 ("245"). *See* Exhs. C through K attached to defendants' motion to dismiss (docket nos. 60-5 through 60-13).[2]

---

[2] Many of the Step I grievances filed with the motion to dismiss are of poor quality. For this reason, the court has reviewed the more legible copies of the grievances provided by the MDOC defendants.

### 4. Summary of grievances

#### a. Grievance 411

The Step I grievance refers to an incident date of May 15, 2008 and includes general complaints about plaintiff's treatment at ITF. The grievance does not name CMS, Dr. Girlach, Dr. Coleman or P.A. Sperling.

#### b. Grievance 445

The Step I grievance refers to an incident date of May 29, 2008 and complains of the lack of shoes or boots being provided. While this grievance refers to treatment by a physical therapist, it does not name CMS, Dr. Girlach, Dr. Coleman or P.A. Sperling.

#### c. Grievance 662

The Step I grievance refers to an incident date of September 9, 2008, and refers to "a real need" for physical therapy. Plaintiff further stated that he received only 4 of the 5 ordered physical therapy sessions. The grievance does not name CMS, Dr. Girlach, Dr. Coleman or P.A. Sperling.

#### d. Grievance 708

The Step I grievance refers to an incident date of September 22, 2008, refers to a conversation with Nurse Manager Moore and the Pain Management Committee (sometimes referred to as the "PMC"). The grievance does not name CMS, Dr. Girlach, Dr. Coleman or P.A. Sperling.

#### e. Grievance 744

The Step I grievance refers to an incident date of "continuous" and is dated October 14, 2008. This grievance was rejected at all three steps of the grievance process because it did not comply with the grievance policy, being duplicative of no. 662. *See* Policy Directive 03.02.130 ¶

G 1. ("Prisoners and parolees are required to file grievances in a responsible manner . . . A grievance may . . . be rejected for any of the following reasons: 1. It is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievance.")

### f. Grievance 855

The Step I grievance refers to "multiple" dates of incident, with the grievance being dated December 3, 2008. The issue grieved as "On what grounds did C.M.S. deny my [right] to be seen by a sterno vascular specialist?" Plaintiff discussed "referrals" made on March 21, 2008 and May 5, 2008. The grievance was rejected as untimely. *See* Policy Directive 03.02.130 ¶ G.3 (a grievance may be rejected if it "is filed in an untimely manner").

### g. Grievance 886

The Step I grievance refers to an incident date of December 15, 2008. The grievance stated as follows (in his words):

> "On 12-15-08', I was informed by Staff at OTF Health Care, that a PODIATRIST would not be Scheduled. Is it CMS's position that nothing is wrong? That my needs are being Met?

In the Step I response, plaintiff was informed that the Podiatry consult was denied, that he was educated on continuing physical therapy exercises that were previously given to him, that CMS recommended ankle exercises, and that pain medication would continue to be provided as needed.

### h. Grievance 245

The Step I grievance refers to an incident date of March 10, 2009. Plaintiff complained in this grievance that he sent "Healthcare" kites about the physical health of his neck and clavical areas, did not receive a response, that he would like an answer and that he is being

9

ignored and treated with indifference. The response notes that plaintiff was evaluated by a Medical Provider on March 16, 2009, that he has been approved to be evaluated by podiatry, that he has been approved to be evaluated by an orthopedic surgeon, and that the "Pain Management [paperwork] had been resubmitted."

### 5. Dr. Coleman

Plaintiff alleged that when he saw Dr. Coleman on September 11, 2008 regarding a staph infection, and raised the issue of physical therapy, the doctor said he could not talk about the physical therapy. Amend. Compl. at ¶ 147. Dr. Coleman examined plaintiff's foot on October 10, 2008, and allegedly told plaintiff he could do nothing for him and then asked plaintiff why he did not take responsibility for being in prison. ¶ 156. Finally, plaintiff alleged that Dr. Coleman examined him on December 15, 2008, at which time the doctor told plaintiff that CMS instructed plaintiff to remember his physical therapy exercises. ¶¶ 194-95. None of the grievances name Dr. Coleman or refer to him as the "doctor." The only grievance which referred to a treatment date by Dr. Coleman, no. 886, did not complain about the doctor. Because plaintiff failed to name Dr. Coleman in a grievance, plaintiff has failed to properly exhaust a grievance against this defendant as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Sullivan v. Kasajaru*, 316 Fed. Appx. 469, 470 (6th Cir. 2009) (affirming dismissal for lack of exhaustion where prisoner failed follow requirements of Policy Directive 03.02.130, which explicitly required him to name each person against whom he grieved, citing *Jones* and *Woodford*). Accordingly, Dr. Coleman is entitled to dismissal for lack of exhaustion.

### 6. Dr. Girlach

In his summary of claims[3] plaintiff contends that Dr. Girlach failed to provide him with pain medication, mocked and humiliated him, showed deliberate indifference and reckless indifference to his medical condition, provided false diagnoses, inflicted needless pain and suffering and failed to follow a doctor's recommendation. The specific allegations set forth in the amended complaint, however, show that Dr. Girlach had limited involvement with plaintiff. While at the Deerfield Correctional Facility (ITF), plaintiff alleged that Dr. Girlach committed the following wrongful acts. On May 9, 2008, Dr. Girlach scoffed at him and told him to do his physical therapy on his own. Amended Compl. at ¶ 48. On May 19th, Dr. Girlach observed that plaintiff was in "a huge brace" and that he (Dr. Girlach) needed guidance in treating plaintiff. *Id.* at ¶ 51. On June 23rd, when plaintiff asked Dr. Girlach for relief from the brace, the doctor told plaintiff that he could not remove the brace and that plaintiff needed an orthopedic consultation. *Id.* at ¶ 86. On that same date, when plaintiff inquired about physical therapy, Dr. Girlach stated that the bone scan results were missing and if they did not turn up, he would go to Ionia Hospital to get the results. *Id.* at ¶ 87. Later that day, Dr. Girlach told plaintiff that he was aware of an Augmentin prescription that the dentist prescribed for plaintiff's infection. *Id.* at ¶ 90.

The only reference to Dr. Girlach appears in grievance 744, which was rejected as improperly filed. Plaintiff he has failed to properly exhaust a grievance against Dr. Girlach as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Sullivan*, 316 Fed. Appx. at 470. Dr. Girlach is entitled to dismissal for lack of proper exhaustion.

---

[3] Plaintiff refers to this as "IV. State of Claim." *See* Amended Compl. at pp. 7-10.

### 7. P.A. Sperling

Plaintiff has only two allegations against P.A. Sperling. First, plaintiff alleged that on March 8th through 13, 2008, no medication was provided to him, even though he was in great pain and distress. Amend. Comp. at ¶ 3. Plaintiff apparently attributes this action to P.A. Sperling. *See* "State of Claim" at p. 7, ¶ 5. Then, plaintiff alleged that on May 10, 2008:

> I was seen by Kyle Sperling, Physician's Assistant (P.A.). He took all information that I could provide as to my outside doctor's. I asked for pain medication, his reply was he was not authorized to prescribe pain medications, also stating that he could not fully evaluate me, that the doctor would do this.

Amended Compl. at ¶ 4. The only grievance to mention P.A. Sperling is grievance 744. As previously discussed, this grievance was rejected as improperly filed. Plaintiff he has failed to properly exhaust a grievance against P.A. Sperling as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Sullivan*, 316 Fed. Appx. at 470. Accordingly, P.A. Sperling is entitled to dismissal for lack of proper exhaustion.

### 8. CMS

The only grievance to name CMS was grievance 886, with an incident date of December 15, 2008, complaining that a podiatrist was not scheduled. The amended complaint does not include any claim against CMS arising from this issue. Under these circumstances, plaintiff has failed to properly exhaust a grievance against this defendant as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Sullivan*, 316 Fed. Appx. at 470. CMS is entitled to dismissal for lack of exhaustion.

### IV. Defendants' motion for summary judgment (docket no. 61)

#### A. Legal Standard

Defendants Quality Administrator Martin, HUM Griffes, Nurse Manager Crisenberry, Director of Nursing Julie Van Setters, Warden Lafler, Deputy Warden Gridley, Nurse Manager Moore, Administrative Assistant Schafer, and HUM McKenna have moved for summary judgment on various grounds. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

#### B. Defendants Carol M. Griffes, Judy Crisenberry, Julie Van Setters, Lori Gridley, Stephen Moore, Donna Schafer and Eileen McKenna

13

Plaintiff does not allege that any of these defendants provided him with medical care. Rather, plaintiff's claims against these defendants arise from their acts in responding to grievances: Director of Nursing Van Setters (¶ 95-96, 99, 104-05, 107-08, 158, 182, 184, 205); Nurse Manager Moore (¶¶ 148-51, 168, 184); and Deputy Warden Gidley (¶¶ 152, 168). *See* Affidavits of Director of Nursing Van Setters (docket no. 64); Nurse Manager Moore (docket no. 62-11); and Deputy Warden Gidley (docket no. 62-9). In addition, while the "State of Claim" portion of plaintiff's amended complaint lists HUM Griffes, Nurse Manager Crisenberry, Administrative Assistant Schafer and HUM McKenna , their names do not appear in the 229-paragraphs of allegations which comprise the amended complaint. *See* docket no. 6. Affidavits from these four defendants establish that they did not treat plaintiff, but simply responded to plaintiff's grievances filed against various medical treaters. *See* Affidavits of HUM Griffes (docket no. 62-5); Nurse Manager Crisenberry (docket no. 62-6); Administrative Assistant Schafer (docket no. 62-10) and HUM McKenna (docket no. 62-12).

A prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care). Plaintiff has failed to state a federal constitutional claim against Director Van Setters, Nurse Manager Moore, Deputy Warden Gidley, Nurse Manager Crisenberry, Administrative Assistant

14

Shafer, and HUM McKenna.. Accordingly, these seven defendants are entitled to summary judgment.

### C. Defendant Angela Martin

Quality Administrator Angela Martin moved for summary judgment and is the subject of plaintiff's motion to amend the amended complaint. In his amended complaint, plaintiff alleged that Quality Administrator Angela Martin responded to various grievances. *See* Amend. Compl. at ¶¶ 163, 177, 184, 206, 220-21. In her uncontested affidavit, Angela Martin points out that she did not investigate or review any responses to grievances filed by plaintiff regarding health care and that the "Martin" whose name and signature appears in some grievance responses is not her. *See* Angela Martin Aff. (docket no. 62-4). Plaintiff, apparently recognized this error and filed a motion to amend his amended complaint to remove Angela Martin as a defendant in this action. *See* discussion in § V, *supra*. Accordingly, defendant Angela Martin is entitled to summary judgment.

### D. Warden Lafler

Plaintiff alleged that he wrote a kite to Warden Lafler on March 4, 2009, claiming that his health care issues have not been addressed in one year. *See* Amend. Compl. at ¶ 207; Exh. 1I (docket no. 6-10). The warden's office allegedly responded that it was "not authorized or licensed to interfere in the on-going treatment provided." *Id.* The complete response provided by the warden's office was as follows:

> Your complaint was forwarded to the HUM. Information was received that a request was sent to Pain Management on your behalf. They are still awaiting recommendations. On 2/5/09 you were fitted for a "Drew Boot." Xrays were taken completed & show mild arthritis. You have a follow up appointment with the medical provider at OTF.
>
> The warden's office is not authorized nor licensed to interfere in the on-going treatment provided. Please continue to work with the facility health care

professionals. Kite them with your concerns & ask for appointments to discuss these issues.

Warden's Office

March 4, 2009 Kite (docket no. 6-10). Plaintiff alleged that he wrote another kite to the warden advising that health care misled or misinformed the warden and that "he is responsible for every inmate in his custody, to provide a standard of care, and of every employee in his prison facility." Amend. Compl. at ¶ 208.

There is no evidence that Warden Lafler provided medical treatment to plaintiff. The response to plaintiff's March 4, 2009 kite advised plaintiff of the steps that the correctional facility's health care providers made to treat his medical condition. Defendants point out that Warden Lafler did not personally correspond with plaintiff. Rather, the kite response was sent by staff at the "warden's office." *See* Lafler Aff. at ¶¶ 3-5. Plaintiff's claim against Warden Lafler appears to be one for respondeat superior, seeking to hold the warden liable for the actions of "every employee in his prison facility." Amend. Compl. at ¶ 208. It is well settled that a § 1983 action cannot be based on a theory of respondeat superior. *See Monell*, 436 U.S. at 691; *Taylor v. Michigan Department. of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). A supervisor's liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Plaintiff has not alleged any personal involvement by Warden Lafler in his medical treatment. Accordingly, the warden is entitled to summary judgment.

### V. Plaintiff's motion to amend the amended complaint (docket no. 87)

Plaintiff seeks to amend his amended complaint to add a new defendant, Nancy Martin, whom plaintiff states "works in the same Administrative Office as does the [m]istaken Angela Martin." Plaintiff's motion to amend should be denied. Fed. R. Civ. P. 15(a)(2) provides in pertinent part that "a party may amend its pleading only with the opposing party's written consent or the court's leave," and that "[t]he court should freely give leave when justice so requires." However, "[a] motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995).

As an initial matter, plaintiff has not filed a brief as required by W.D. Mich. LCivR 7.1(a), which provides that all motions filed in this court must be accompanied by a supporting brief, which "shall contain a concise statement of the reasons in support of the party's position and shall cite all applicable federal rules of procedure, all applicable local rules, and the other authorities upon which the party relies." Even if the court viewed the motion as incorporating a brief, the motion would be deficient because it fails to set forth the reasons for adding Nancy Martin or the proposed allegations against her. Furthermore, if plaintiff wants to amend the amended complaint by simply substituting the name "Nancy Martin" for "Angela Martin," his proposed amendment is futile, because the claims against "Angela Martin" involve allegedly improper responses to grievances. *See* Amend. Compl. at ¶¶ 163, 177, 184, 206, 220-21. As previously discussed, the mere denial of a grievance does not rise to the level of a federal constitutional claim. *See Alder*, 73 Fed. Appx. at 841; *Martin*, 14 Fed. Appx. at 309. Justice does not require that plaintiff be allowed to amend his amended complaint, and plaintiff's motion should be denied.

17

### VI. Recommendation

For the reasons set forth above,

I respectfully recommend that defendants' motion to dismiss (docket no. 60) be **GRANTED** as to Dr. Coleman, Dr. Girlach, P.A. Sperling and CMS.

I further recommend that defendants' motion for summary judgment (docket no. 61) be **GRANTED** as to Angela Martin, Carol M. Griffes, Judy Crisenberry, Julie Van Setters, Blaine Lafler, Lori Gridley, Stephen Moore, Donna Schafer, and Eileen McKenna.

I further recommend that plaintiff's motion to amend the amended complaint (docket no. 87) be **DENIED**.


Dated: July 26, 2010                    /s/ Hugh W. Brenneman, Jr.
                                        HUGH W. BRENNEMAN, JR.
                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).